**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: October 1 2013

Mary Ann Whipple
United States Bankruptcy Judge
(Successor Judge Docket)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No: 11-33239 |
| | ) | |
| Medcorp, Inc. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 13-3065 |
| | ) | |
| John N. Graham, Trustee | ) | SUCCESSOR JUDGE |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| The Huntington National Bank | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF DECISION DENYING MOTION OF THE DEFENDANT TO DISMISS

This cause is before the court on the Motion to Dismiss filed by the Defendant, the Huntington National Bank. [Doc. #6]. The Plaintiff/Trustee, John N. Graham, responded by filing his Memorandum in Opposition. [Doc. # 13]. The Plaintiff/Trustee also filed a Motion for Leave to Amend his Complaint. *Id*. Having now had the opportunity to consider the parties' respective positions, as well as the applicable law, the court finds that the Defendant's Motion to Dismiss should be Denied and, as a result, the Plaintiff's Motion for Leave to Amend his Complaint will be Denied as Moot.

# BACKGROUND

The Debtor, Medcorp Inc. ("Debtor"), was formerly engaged in the business of providing ambulance services. On June 10, 2011, the Debtor filed a petition in this court for relief under Chapter 11 of the United States Bankruptcy Code.[1] (Case No. 11-33239). A short time later, the court entered an order, divesting the Debtor of its status as a debtor-in-possession, and appointing the Plaintiff, John Graham, as trustee ("Plaintiff"). The court ultimately entered an order, consummating a sale of substantially all of the Debtor's assets in accordance with 11 U.S.C. § 363.[2]

On May 2, 2013, the Plaintiff commenced this action against the Defendant, the Huntington National Bank ("Bank"). Plaintiff's complaint seeks to avoid and then recover for the benefit of the Debtor's bankruptcy estate a prepetition transfer made to the Bank. The transfer at issue had been made under the direction of Mark Uhrich who, prior to the commencement of the Debtor's bankruptcy case, had been appointed a state-court receiver of the Debtor's assets and business operations. As the statutory basis for his action, the Plaintiff relies on Bankruptcy Code § 547 which, generally speaking, allows a bankruptcy trustee to avoid prepetition transfers made by a debtor if the effect of the transfer was to prefer one creditor over the debtor's other creditors.

The transfer at issue in this matter was made on September 21, 2010, and was for the sum of $685,678.46. These funds had come under the receiver's custody and control as the result of a prepetition settlement reached in a legal malpractice case brought by the Debtor. The transfer was then made by the receiver to the Bank on account of a prepetition judgment the Bank had obtained against the Debtor for the approximate amount of ten million dollars.

# DISCUSSION

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under, arising in or related to a case under Title 11. This proceeding has been

---

[1] Two related entities also commenced separate cases under Chapter 11 of the Bankruptcy Code at this same time: (1) Stickney Avenue Investment Properties, LLC; and (2) Medcorp E.M.S. South, LLC. These cases were, pursuant to an order entered by the court, administratively consolidated with the herein bankruptcy case of Medcorp, Inc., Case No. 11-33239.

[2] The court takes judicial notice of the contents of its case docket in the underlying Chapter 11 case. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Because this matter raises an issue concerning a preferential transfer for purposes of Bankruptcy Code § 547, this is a core proceeding that the court may hear and determine. 28 U.S.C. §§ 157(b)(1) and 28 U.S.C. §§ 157(b)(2)(F).

In this proceeding, the Plaintiff seeks to avoid and then recover a prepetition transfer made by the Debtor to the Bank for the sum of $685,678.46. This transfer was made while the Debtor was under the control of the state-court appointed receiver. As the statutory basis for this action, the Plaintiff relies on § 547 of the Bankruptcy Code.

Under § 547(b), but subject to certain affirmative defenses, a bankruptcy trustee may avoid any transfer of an interest of the debtor in property if each of these elements is present:

(1) the transfer was to or for the benefit of a creditor;

(2) the transfer was made for or on account of a debt owed by the debtor before the transfer was made;

(3) the transfer was made while the debtor was insolvent;

(4) the transfer was made within 90 days of the filing of the bankruptcy petition or within one year of the date of the petition if the creditor at the time of the transfer was an insider; and

(5) the transfer enabled the creditor to receive more than it would receive in a Chapter 7 case if the transfer had not been made.

11 U.S.C. § 547(b). The policy rationale for allowing a bankruptcy trustee to avoid a transfer that satisfies these elements is twofold: (1) discourage creditors from extracting payments from financially troubled debtors by exerting undue pressure upon them; and (2) to prevent a debtor from playing favorites among creditors by targeting those creditors to whom they wish to make payments, to the detriment of the debtor's other creditors. *In re CM Holdings, Inc.*, 264 B.R. 141, 156 (Bankr. D. Del. 2000).

Of the five elements necessary to sustain a preference claim under § 547(b), it is the fourth element – concerning the timing of the transfer – which gives rise to the primary point of contention between the parties. Under this element, a transfer made by a debtor is only avoidable as a preferential transfer if the transfer was made within a specified time frame preceding the filing of the petition for bankruptcy relief.

In all instances, this time period is 90 days, but in those instances where the transferee is an "insider" of the debtor, the time period is extended to one year.

In this proceeding, since the transfer at issue occurred on September 21, 2010, and the Debtor did not file for bankruptcy relief until June 10, 2011, some nine months later, the complaint filed by the Plaintiff pled that, when it received the transfer from the state court, the Bank qualified as an "insider" for purposes of § 547(b). Specifically, the Plaintiff alleged that "Huntington is an insider of MedCorp as a result of its control over its Receiver, Mark Uhrich." [Doc. # 1, ¶ 27]. According to the Bank, however, the complaint filed by the Plaintiff did not plead sufficient facts to establish its status as an "insider." It is on this basis which the Bank predicates its Motion to Dismiss.

A motion brought to dismiss an adversary proceeding is governed by Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Bankruptcy Rule 7012(b). In bringing its Motion to Dismiss, the Bank cited specifically to Rule 12(b)(6) as the basis for its Motion. This Rule provides that a complaint may be dismissed for the "failure to state a claim upon which relief can be granted[.]"

For claims brought in federal court, the Federal Rules of Civil Procedure have adopted the concept of notice pleading, replacing the common law standard of fact pleading. *See Thomson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004) ("The federal rules replaced fact pleading with notice pleading"). Under the notice theory of pleading, a plaintiff is not required to plead all of their facts or legal theories to maintain an action. Instead, notice pleading only requires that a plaintiff allege sufficient information to afford the defendant fair notice of what claim is being brought and the grounds upon which the claim rests. *Benuzzi v. Bd. of Educ. of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011).

Rule 8 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7008, governs notice pleading in the bankruptcy courts. Under this Rule, it is provided that a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). A complaint which satisfies this standard will defeat a Rule 12(b)(6) motion to dismiss. Citing to the Supreme Court cases of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), it is the position of the Bank that the Plaintiff has failed to meet the notice-pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure. [Doc. # 6, at pg. 5-6].

The Supreme Court cases cited by the Bank, *Twombly* and *Iqbal*, have heightened the notice pleading requirement of the Federal Rules of Civil Procedure. Now, although a complaint need not contain "detailed factual allegations " to withstand a motion to dismiss brought under F.R.Civ.P. 12(b)(6), the complaint must go beyond mere "labels and conclusions" so that a "formulaic recitation of the elements of a cause of action" is no longer sufficient to maintain a viable complaint. *Twombly*, 550 U.S. at 555. What is now required under *Twombly* and *Iqbal* is that sufficient facts must be plead to show that a claim is plausible on its face. *Iqbal*, 556 U.S. at 678.

For this purpose, plausible does not mean probable – probable being a more demanding standard. *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 868 (6th Cir. 2012). In *Iqbal*, the Court held that a facially plausible claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. In short, the "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

Following *Twombly* and *Iqbal*, the Sixth Circuit Court of Appeals observed:

> it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is plausible on its face if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility is not the same as probability, but rather asks for more than a sheer possibility that a defendant has acted unlawfully.

*Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 369 (6th Cir. 2011).

Two points are advanced by the Bank as to why the Plaintiff's complaint does not meet the notice-pleading requirement of the Federal Rules of Civil Procedure under the standards established in *Twombly* and *Iqbal*. First, the Bank argues that the Plaintiff failed "to plead sufficient facts necessary to support his legal conclusion" that the Bank is an insider of the Debtor as a result of its control over the state-court receiver. [Doc. # 6, at pg. 9]. Second, citing to Ohio law on receiverships, the Bank argued that the Plaintiff arrived at a "flawed legal conclusion" in averring that the Bank was an insider of the Debtor as a result of the Bank's control of the state-court receiver.

For the court, the Bank's first point, under which it asserts the insufficiency of the facts pled by the

Plaintiff, is a close call. In his complaint, the factual allegations raised by the Plaintiff concerning the Bank's status as an insider are based upon the following statements:

> (1) Throughout the course of the receivership, Mark S. Uhrich and his counsel conferred regularly with Huntington.
>
> (2) Mr. Uhrich was under the direction and control of Huntington throughout the receivership.
>
> (3) On September 16, 2010, Huntington directed the Receiver to pay it the net proceeds of the settlement with the Common Pleas Defendants.
>
> (4) On or about September 21, 2010, MedCorp paid Huntington $685,678.46.
>
> (5) Huntington is an insider of MedCorp as a result of its control over its Receiver, Mark Uhrich.
>
> (6) Mark Uhrich made the Transfer to Huntington without the authority of the Lucas County Court of Common Pleas.
>
> (7) The Transfer to Huntington was in payment for an unsecured obligation.

(Doc. # 1, ¶¶ 19-29). There can be no dispute that the Plaintiff's allegations have an air of being simply "labels and conclusions" for which *Twombly* and *Iqbal* teach that a plaintiff's complaint must go beyond. This is particularly true with respect to above paragraph five. A look at the Bankruptcy Code's definition of an "insider" also shows that at least a couple of the above statements correspond to what *Twombly* warned are insufficient allegations because they are only a "formulaic recitation of the elements of a cause of action."

The Bankruptcy Code provides a statutory definition of the term "insider." Where, as here, the Debtor is a corporation, an "insider" includes a "person in control of the debtor." 11 U.S.C. § 101(31)(B)(iii). The Plaintiff's allegation, that the Bank qualifies as an "insider" of the Debtor, is premised on the Bank's control of the Debtor under this definition.

For purposes of establishing an "insider" relationship, however, control does not necessarily arise because the creditor had financial power and influence over the debtor. *In re Armstrong*, 231 B.R. 746, 749 (Bankr.E.D.Ark.1999). Similarly, control over a debtor does not arise simply because of an inferior bargaining position on the part of the debtor. *In re Sullivan Haas Coyle, Inc.*, 208 B.R. 239, 245 (Bankr. N.D. Ga. 1997). Likewise, a creditor's access to a debtor's private financial information does not necessarily

6

denote control over a debtor. *In re Radnor Holdings Corp.*, 353 B.R. 820, 841 (Bankr. D. Del. 2006).

Instead, to come within the rubric of being in control of a debtor for purposes of being an "insider," the alleged insider must have exercise sufficient authority over debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets. *In re Velo Holdings Inc.*, 472 B.R. 201, 208 (Bankr. S.D. N.Y. 2012); *In re TBR USA, Inc.*, 429 B.R. 599, 624 (Bankr. N.D. Ind. 2010). When making this determination, courts assess the totality of the circumstances. *In re Sullivan Haas Coyle, Inc.*, 208 B.R. 239, 245 (Bankr. N.D. Ga. 1997). An often assessed consideration in this regard is whether the transaction was at arm's length. *Id*. at 246.

Set within this framework, above paragraph five, is clearly a formulaic recitation of the legal standard for an "insider." The same can also be said of above paragraph two which, by providing that Mr. Uhrich was under the direction and control of Huntington throughout the receivership, simply echoes the statutory language of an insider under 11 U.S.C. § 101(31)(B)(iii). Notwithstanding, the remaining allegations, as set forth in paragraphs one, three, four, six and seven, while not replete with detailed information, do add something more to the formula.

The holdings of the Supreme Court in *Twombly* and *Iqbal* do nothing to change the principle that when assessing a Motion to Dismiss under 12(b)(6), the court must accept all alleged facts as true, and view such facts in the light most favorable to the nonmovant. *Napolitano*, 648 F.3d at 369. For this purpose, above paragraph three is particularly relevant. In above paragraph three, the Plaintiff specifically alleges that the Bank directed the state-court receiver to pay it the net proceeds from the state-court settlement. To the extent that the receiver actually effectuated the transfer based upon this directive, a plausible inference arises that the state-court receiver, and by extension, the Debtor was under the direct control of the Bank.

Additionally, when coupled and read together, above paragraphs one, three, four, six and seven beg this question: Why, after conferring with the Bank on a regular basis, did the receiver make a large transfer, $685,678.46, without a court order to the Bank on an unsecured debt? For any court, one of the array of plausible answers to this question would involve the conclusion that it was the Bank who was dictating the disposition of the Debtor's assets – particularly given the nonordinary course nature of the transaction. In this regard, the standard set forth in *Twombly* and *Iqbal*, *supra*, is the plausibility, not the probability of the factual allegations contained in a complaint.

In sum, the court concludes that, even under the heightened notice pleading standard set forth in *Twombly* and *Iqbal*, the allegations contained in the Plaintiff's complaint state sufficient facts to withstand a motion to dismiss under F.R.Civ.P. 12(b)(6). That is, when read together, the above allegations make a plausible claim that, as applied to the statutory definition of an "insider" under §§ 101(31)(B)(iii), it was the Bank who, vis-a-vis the receiver, was in control of the Debtor. The court now turns to address the second issue raised by the Bank.

The second position advanced by the Bank in support of its Motion to Dismiss holds that, based upon Ohio law on receiverships, the Plaintiff arrived at a "flawed legal conclusion" in averring that the Bank was an "insider" of the Debtor. The Bank predicates this position on the contention that a receiver under Ohio law operates under the direction and control of the appointing court. In the words of the Bank:

> By its very nature, a receiver under Ohio law is not subject to the direction and control of a creditor like Huntington. To the contrary, a receiver "is an officer of the court" that has a personal duty to: 1) faithfully discharge his or her duties, 2) obey the orders of the court, 3) act in a fiduciary capacity, and 4) use ordinary care in administering the assets of the corporation. In fact, one bankruptcy court has refused to accept the very proposition that a state court's receivership order transformed a receiver into an "insider."

(Doc. # 6, at pg. 10).

The court cannot find any particular fault with the Bank's statement of the law regarding receiverships under Ohio law. In Ohio, receivers are court appointed officers, subject to the control of the court. *Huntington Natl. Bank v. Motel 4 BAPS, Inc.*, 191 Ohio App.3d 90, 94 944 N.E.2d 1210 (Ohio App. 8th Dist. 2010); *INF Ent., Inc. v. Donnellon*, 133 Ohio App.3d 787, 788, 729 N.E.2d 1221 (Ohio App. 1st Dist. 1999). Receivers also act in a fiduciary capacity and, as such, must use ordinary care in administering the assets of a corporation. 32 OHIO JUR 3D *Receivers* § 6. These facets of a receivership, however, do not, as a matter of law, denote that the Plaintiff has not made a plausible claim against the Bank.

As stated, the Plaintiff, in his complaint, averred that the transfer made to the Bank was done without the authority of the appointing court. To the extent that this statement is true, the receiver in this matter may not be entitled to the protections and immunity otherwise afforded to receivers acting under the direction of the appointing court. *Donnellon*, 133 Ohio App.3d at 788 ("If the receiver exceeds the authority granted by the court or fails to use ordinary care, the general rule is that he or she may be sued in a personal capacity."). However, the determination of this matter, as it may be dispositive of the issue as to whether

the Bank was an "insider," is a matter which is necessarily fact specific, and thus must be decided on a case-by-case basis. *In re Richmond*, 429 B.R. 263 (Bankr. E.D. Ark. 2010). As such, the determination of the matter is not ripe for adjudication on a motion to dismiss under F.R.Civ.P. 12(b)(6).

For these reasons, the court finds that the Bank's Motion to Dismiss should be denied. The court, as a result, will deny as moot the Plaintiff's Motion for Leave to Amend his Complaint.

The court will enter a separate order in accordance with this Memorandum of Decision.

###